# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EMERSON L. GLASER, | : | |
| Plaintiff, | : | Civil Case No. 3:05cv0142 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| MONTGOMERY COUNTY COURT OF COMMON PLEAS, et al., | : | |
| | : | |
| Defendants. | | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. INTRODUCTION

Plaintiff Emerson L. Glaser brings this case *pro se* challenging the actions of the Montgomery County, Ohio Court of Common Pleas, Domestic Relations Division; two Common Pleas Court Judges; as well as Plaintiff's ex-wife, her boyfriend, and her sister in connection with child-custody proceedings in state court. Plaintiff movingly alleges in part, "these people all took part in tearing a family apart." (Doc. #1 at 3).

Plaintiff is not proceeding *in forma pauperis* in this case. His case is before the Court upon a Motion to Dismiss (Doc. #4), Plaintiff's Reply (Doc. #6), and the record as a whole.

### II. PLAINTIFF'S COMPLAINT

Plaintiff alleges that on or about July 15, 2004, during a proceeding in the Court of

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Common Pleas, his ex-wife "knowingly lie[d] under oath to obtain custody of their minor children." (Doc. #1 at 3). According to Plaintiff, his ex-wife testified that he kept their children from her, when he in fact had not done so. He emphasizes that his ex-wife had not been a part of their family even during their marriage. *Id*.

Plaintiff further maintains that his ex-wife's sister and his ex-wife's boyfriend also knowingly lied during the Court of Common Pleas' proceedings to assist his ex-wife in obtaining custody of their children.

Plaintiff explains that although Magistrate Reno denied his ex-wife custody of their children twice in 2004, Magistrate Reno "forwarded the case to Judge King who refused to listen to [his] appeals..." (Doc. #1 at 3).

Plaintiff emphasizes that his ex-wife chose not to see their children for weeks at a time, that she "was on welfare and to this date is still on welfare and to this date the abuse and neglect has gotten worse. I have always provided a home and paid for the children's private activities, to which their mother does not attend. She[,] the mother[,] is still living with her boyfriend and another illegitimate child that is not the child of the guy she lives with." (Doc.#1, at 3).

The relief Plaintiff seeks from this Court is as follows:

> Based solely on what has taken place in the lower court, and the action that did not take place I am asking this court to over turn the lower courts['] action and allow myself to show this court why this would be the correct action for this family and for two children who have been placed in an abusive home. I am also asking for $25,000,000 in damages. People all people have got to be accountable to someone, even the Judges who make irresponsible decision because [their] cases are to[o] heavy.

(Doc. #1 at 4).

### III.    DISCUSSION

### A. Motions To Dismiss

When considering a Motion to Dismiss for failure to state a claim for relief, the factual allegations in the Complaint must be taken as true and construed in a light most favorable to the plaintiff. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Because Plaintiff bring this case *pro se*, the Court liberally construes his allegations in his favor. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992). "A *pro se* Complaint is held to an especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)(quoting in part *Estelle*, 429 U.S. at 106).

The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A Motion to Dismiss is often a proper procedural device for resolving pure questions of law. *E.g., Brookings v. Clunk*, 389 F.3d 614, 617-30 (6th Cir. 2004).

### B. Absolute Immunity

Plaintiff's Complaint will not withstand the pending Motion to Dismiss because absolute judicial immunity bars his claims against Common Pleas Court Judge King and Magistrate Reno.

"The availability of absolute judicial immunity in the context of a Rule 12(b)(6) motion to dismiss presents a question of law...." *Brookings*, 389 F.3d at 617. The defendant state judges, as the proponents of absolute immunity, bear the burden of establishing that such immunity is warranted. *Id*. (citations omitted).

"Under 42 U.S.C. §1983, state actors are prohibited from violating the civil rights of

3

others."[2] *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). "As a general rule, judges are immune from suits for money damages. The Supreme Court has specifically held that state judges are absolutely immune from liability under ... §1983." *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997). Absolute immunity applies when judges engage in "paradigmatic judicial acts, or acts of actual adjudication, *i.e.*, acts involved in resolving disputes between parties who have invoked the jurisdiction of the court." *Barrett*, 130 F.3d at 254. "Provided that they do not engage in non-judicial acts or act in the clear absence of all jurisdiction, judges presiding over courts of general jurisdiction are immune from suits for damages even if they act erroneously, corruptly or in excess of jurisdiction." *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985). "A judge acts in the clear absence of all jurisdiction if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides." *King*, 766 F.2d at 965.

Accepting Plaintiff's allegations as true, absolute immunity shields Judge King and Magistrate Reno from Plaintiff's claims for money damages because he does not allege facts or circumstances indicating that these judicial officers engaged in non-judicial acts or acted in the clear absence of jurisdiction. Instead, Plaintiff seeks to challenge the decisions Judge King and Magistrate Reno made during a case brought by Plaintiff's ex-wife concerning the custody of his

---

[2] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

children. Because Common Pleas Court judges and magistrates in Ohio have jurisdiction over such cases, *see* Ohio Rev. Code §3105.011, and because Plaintiff challenges actual acts of adjudication by Judge King and Magistrate Reno, absolute immunity shields these defendants from Plaintiff's claims.

Absolute immunity applies in this case even when accepting as true, as the Court must at this stage of the case, Plaintiff's allegation that "what these judges did was irresponsible." (Doc. #6 at 1). "Provided that they do not engage in non-judicial acts or act in the clear absence of all jurisdiction, judges presiding over courts of general jurisdiction are immune from suits for damages even if they act erroneously, corruptly or in excess of jurisdiction." *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985). Thus, even assuming that Judge King and Magistrate Reno acted irresponsibly, absolute immunity bars Plaintiff's claims against them because they acted within their jurisdiction when ruling on the child-custody dispute between Plaintiff and his ex-wife. *See id*.

Accordingly, absolute immunity bars Plaintiff's claims against Judge King and Magistrate Reno.

      C.      **The *Rooker-Feldman* Doctrine Bars Plaintiff's Complaint**

"The *Rooker-Feldman* doctrine ... stands for the proposition that a party aggrieved by a state-court decision, cannot appeal that decision to a district court, but must instead petition for a writ of certiorari from the United States Supreme Court." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)(citations omitted). "The purpose of the doctrine is to prevent 'a party losing in state court ... from seeking, what in substance would be, appellate review of the state judgment in a United States district court, based on the losing party's claim that the state

5

judgment itself violates the loser's federal rights.'" *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003)(citations omitted).

"Two categories of claims are barred by *Rooker-Feldman*: (1) those which allege some injury arising directly from the state court's judgments, and (2) those which allege an injury predating the state-court's judgments but which are still 'inextricably intertwined' with state-court judgments." *Howard v. Whitbeck*, 382 F.3d 633, 639 (6th Cir. 2004).

The *Rooker-Feldman* doctrine bars Plaintiff's Complaint because he seeks to challenge in this Court rulings, decisions, or judgments entered by Judge King and Magistrate Reno concerning the custody of his children. The focal point of Plaintiff's Complaint, and the main relief he seeks, is an Order from this Court to overturn the decisions of Judge King and Magistrate Reno. Under *Rooker-Feldman*, Plaintiff was obliged to challenge these state judicial actions in the state courts, including the Ohio Court of Appeals and the Ohio Supreme Court, then, if necessary, to pursue further review of the Ohio Supreme Court's final judgment by filing a petition for a *writ of certiorari* in the United States Supreme Court. *See DLX, Inc*, 381 F.3d at 516. Plaintiff instead filed the instant case, which in effect constitutes an improper appeal of a state-court decision in this United States District Court. *See Keller*, 341 F.3d at 597. The *Rooker-Feldman* doctrine presents an unsurmountable bar to such federal litigation.

To the extent that the state judicial decisions predated a final judgment in the state courts, the *Rooker-Feldman* doctrine bars Plaintiff's Complaint, because his challenge to the state judge's child-custody decisions is inextricably intertwined with an ongoing state case. *See Keller*, 341 F.3d at 597; *see also Whitbeck*, 382 F.3d at 639. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal

6

proceeding as…anything [but] a prohibited appeal of the state-court judgment." *Whitbeck*, 382 F.3d at 639. This is precisely the situation Plaintiff's Complaint raises here, particularly since his Complaint challenges the substance and correctness of state judicial decisions in an apparently ongoing child-custody case.

Accordingly, the *Rooker-Feldman* doctrine bars Plaintiff's Complaint.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's Motion to Dismiss (Doc. #4) be GRANTED;

2. Plaintiff Emerson L. Glaser's Complaint be DISMISSED; and

3. The case be terminated on the docket of this Court.

July 29, 2005

                                             s/ Sharon L. Ovington
                                                 Sharon L. Ovington
                                       United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).